## SAMUEL T. STACY, Respondent, v. THE TOWN OF PHELPS, Appellant.

*Duty of commissioners of highways to use reasonable care to insure the safety of the traveling public — they are not compelled to erect a barrier to prevent runaway teams from falling into an excavation made in erecting a bridge.*

A highway bridge over the outlet of Canandaigua lake having been taken away by a freshet the commissioners of highways proceeded to erect a new one in its place, and for that purpose put in a new stone abutment on the north side of the stream. In doing this they caused to be made an excavation of the earth, which left, when the abutment was constructed, a space of from four to five feet wide at the top and about six feet in depth north of and between it and the roadway, the abutment itself extending three feet above the surface of the highway.

During the progress of the work upon the bridge there was a place a short distance north of it, where teams left the highway and forded the stream at another point, which gave reasonable accommodations to the public travel; there was, however, at the time of the accident, no obstruction placed upon the highway to prevent a team from proceeding to the abutment, nor anything to guide a team into the passage-way departing from the highway other than the track there made by its use for travel.

A team of horses, hitched to a wagon, having escaped from the driver on the night of August 5, 1886, ran away and fell into this trench, whereby one of the horses was killed.

In this action, brought by the plaintiff to recover the value of the horse, the death of which was alleged to have been caused by the negligence of the highway commissioners, a judgment was recovered by the plaintiff upon the ground that the commissioners omitted to place any guard for protection against the approach upon the highway, to this place of danger.

*Held,* that the burden of proof was with the plaintiff to establish not only that the commissioners were chargeable with negligence, but that if they had not failed to perform their duty the injury would not have been sustained.

That the Commissioners were only required to use reasonable care for the safety of the traveling public, and that while the situation caused by the removal of the earth and the process of constructing the bridge imposed upon them the duty to guard, in a suitable manner, persons traveling upon the highway, it did not impose upon them the duty to erect a barrier against the fury of a team of horses running away without restraint.

That the judgment should be reversed.

Appeal from a judgment entered on a verdict rendered at the Ontario Circuit, and from order denying a motion upon the minutes for a new trial.

The action was brought to recover the value of a horse, the death of which is alleged to have been caused by the negligence of the

highway commissioners of the town of Phelps, in not properly guarding the highway where a new abutment had been built upon the north side of a stream, north of which abutment and between it and the former roadway an excavation had been made, and left by the commissioners, and a recovery was had against the defendant.

*Frank Rice,* for the appellant.

*E. K. Burnham,* for the respondent.

BRADLEY, J. :

In April, 1886, a highway bridge over the outlet of the Canandaigua lake was taken away by a freshet. The commissioners of highways afterwards proceeded to erect a new one in its place, and for that purpose put in a new stone abutment on the north side of the stream. In doing this they caused to be made an excavation of the earth, which left, when the abutment was constructed, a space from four to five feet wide at the top and about six feet in depth outside of it. And the abutment extended three feet above the surface of the highway. This was the situation on the night of August 5, 1886, when the team of horses hitched to a wagon escaped from the driver, ran away and fell into this trench, which caused the death of one of them. The question is, whether the evidence permitted the conclusion that the loss of the horse was occasioned by the negligence of the commissioners. Upon the theory on which the action was tried and submitted by the court to the jury, and for the purposes of this review the fact must be so treated, they were properly proceeding with the construction of the bridge, and no negligence is attributable to them in respect to the manner in which they did it, or in the fact that the trench referred to was then remaining unfilled, but the imputation against the commissioners is, that they omitted to place any guard for protection against the approach upon the highway to this place of danger.

During the progress of the work upon the bridge there was a place a short distance north of it, where teams left the highway and forded the stream at another point, which gave reasonable accommodation to the public travel. And until July twenty-eight, there was a derrick standing in the highway and used in the construction of the abutment, which was finished on that day, and on that or the

following day the derrick was taken away, and thereafter until after the time in question there was no physical interruption to the progress to the place of the injury. Nor was there anything to guide a team into the passage-way departing from the highway, other than the track there made by its use for travel. Yet the extension of the abutment three feet above the highway was so apparent to a traveler in the day-time that no danger would be apprehended, but it cannot be said that it would be so in the night-time, when the darkness might deny to him the means of observation to avoid the danger. It cannot therefore be held as matter of law that the commissioners were free from negligence, but on the contrary their omission to place some guard or warning at a suitable place to stay the passage in the highway to the trench justified the conclusion that they had failed to perform their duty and were chargeable with negligence. This however does not charge the defendant with liability, unless it may be seen that such negligence caused the accident and loss in question. And here arises the important inquiry in this case. It may be assumed that the injury would not have occurred if the horses had not escaped and ran away. It is quite difficult to conjecture the consequences which may result to a frightened team of horses running away at a high rate of speed without a driver. And hence in some States it is held that no liability in such case ordinarily arises for injuries resulting to them on the ground of negligence. (*Davis* v. *Dudley* 4 Allen, 557.) But in this State and many others the rule is broader and embraces the injurious consequences following such escape within the proximate case, and when they are produced by the negligence of another, he may be chargeable with liability. (*Ring* v. *City of Cohoes*, 77 N. Y., 83; *Lane* v. *Wheeler*, 35 Hun, 606.) The burden of proof was with the plaintiff to establish not only that the commissioners were chargeable with negligence, but that if they had not failed to perform their duty the injury would not have been sustained. This fact cannot rest in mere speculation or conjecture, but must be founded upon evidence, which permits the jury to reach that conclusion. (*Taylor* v *City. of Yonkers*, 105 N. Y., 202–208.) The commissioners were required to use reasonable care for the safety of the traveling public. And in respect to the situation caused by the removal and the process of construction of the bridge, their duty was in a suitable

manner to guard the traveler against the danger incident to it, which did not impose upon them the necessity to erect a barrier against the fury of a team of horses running away without restraint. A lighted torch and a conspicuous notice may have warned the driver and given protection to a team under his control. It evidently would have had no such effect upon the movement of unguided horses; and the same may be said of any warning to persons traveling on the highway other than that furnished by physical obstruction to passage, and, if frail, that would not have been likely to stay their unbridled progress at full speed. The duties of these officers impose upon them ordinary, not extraordinary, care, which is quite commonly expressed as reasonable diligence. There must, in the legal sense, be some boundary to the requirements of their official action, and that may be defined by the purpose for which their duties are to be performed, which is to exercise reasonable care in keeping the roads in a condition of safety for the public travel, and in warning the traveler against dangers that may exist there. If the officers, in respect to a dangerous condition, while it continues without their fault, must do more than is requisite to warn persons traveling upon the highway, then there is no line of limitation of their duty in that respect, nor any legal qualification of liability when the plaintiff is free from negligence, but the question becomes one of fact for the jury. Such cannot be the rule. When the officers have in such case furnished suitable warning to persons traveling on the highway, they have done all that is required of them in that respect; and when they have failed to do this, a liability may result from an injury attributable to such neglect. But it is not sufficient, when they have so failed to do it, to say that if they had done their duty they may have performed it in such manner as to have prevented the injury complained of, unless their duty required them so to do it that it may have had that effect. The application of that doctrine to the case at bar seems not to support the theory upon which the trial court submitted it to the jury. The warning required to protect the traveler was not necessarily such as would stop a runaway team of horses and save them from injury; and to charge the defendant the injury must have been caused by the neglect of these officers to do that which the law imposed upon them as a duty. It may have been reasonable and

proper for them to have placed a structure in the highway at the point of departure from it into the temporary way, and this may have turned these horses into the latter and saved them from injury; but such a structure there was not essential to warn the traveler driving his team. All that was necessary for him was a timely and sufficient notice of the danger.

This matter of warning has no application to an injury sustained by reason of a defect in the highway occasioned or continued by the negligence of such officers. A liability may in such case arise from an injury suffered by a team which has escaped and is running away, because it is produced by the negligence of the officer or municipality charged with the duty of keeping it in repair. And in this case if the omission to fill or cover the trench might be treated as negligence on the part of the commissioners a different question might be presented. But no such question was submitted to the jury. The only inquiry left to them as bearing upon this branch of the case had relation to their neglect to furnish the requisite guard or warning and left it to the jury to say whether the injury was the result of such neglect. This, in the view taken here, did not furnish any basis for recovery for the reasons before given.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

BARKER, P. J., and HAIGHT, J., concurred.

Judgment and order reversed and new trial ordered costs to abide event.